in this matter. As the Court is aware, there was an Anders brief that was filed in this case, and the Court, in the process of conducting independent review of the record, determined that there was certain Rule 11 error, and has appointed new counsel and directed me to address the issue of whether the individual should be charged  with these omissions constituted plein air. And I tried to do that in both the opening and reply briefs that were filed in this matter. If the Court wants to direct me to any particular issues or questions that you may have before I make a few comments, I'm happy to answer those. If not, I'll proceed onward. I'd be interested to know what substantial rights of your client were violated. Assuming that we go on the Rule 11 approach. Well, I think the substantial rights are still two of the boycott trial rights, his right of confrontation. I think also his right to, at trial, not be forced to incriminate himself. I also think there were some other, I'll call them trial rights, but they're trial rights that the Court failed to tell Mr. Ramirez about. And that would be his right to testify at the trial if he chose to do so, the right at trial to present evidence in his defense. Also, the Court never informed Mr. Ramirez that at trial he would have the right to compel the attendance of witnesses. And most importantly, the Court never informed the defendant that by pleading guilty he was giving up these rights. I really do believe there's a due process violation in this case, and I have argued that in the brief. And, of course, as the Court is aware, the main case that I think deals with plain error under Rule 11, when there's a Rule 11 violation, is Dominguez-Benitez. And Dominguez-Benitez, I think both in footnote 10, which is mentioned in the brief and also elsewhere in the opinion as well, indicates that if there's a due process violation, if a person is not informed of their rights to the point where they know that those rights exist and, therefore, they are intentionally relinquishing those rights when they plead guilty, that's a matter of a due process violation. And as such, one doesn't have to show the requirement that there's a reasonable probability that what for these errors the defendant would not have pled guilty. I'm sorry. Under Vaughn, is that true? Pardon me? Under United States v. Vaughn, is what you just said accurate? Yes, I think it is. So you're saying that even though your client may not have been told each and every possible thing that could happen, that it remains a reversible constitutional error, even though your client did not indicate that had these things been told him, he would not have pled guilty? Well, first of all, I think that what makes this a due process violation are the two trial or the two Boykin trial rights. He was never told that at trial he would have the right to confront the evidence against him. He was basically never told, in other words, that he had a right at trial to challenge the evidence, because that's really what the Confrontation Clause is all about. And his attorney had to tell him that? Pardon me? His attorney not tell him that? Well, first of all, one would hope – I'm going to be frank about this. One would hope that an attorney representing a client would go over trial rights. But the important thing is, when there's a due process violation, I believe, is that the record itself has to reflect that. And there's absolutely nothing – and this is Boykin. Boykin says that there must be a record that shows a person was – that a person intentionally relinquished a known right. And what I'm saying, Your Honor, is there's nothing in this record, including any advice that the attorney may or may not have given him, that demonstrates that he was aware of this. And it is for that reason that this is a due process violation. Now, this comes up to us on plain error because there was no objection. Right. And I read through the colloquy. And at the end, the district judge asks both sides, now, is there anything more? Right. Both lawyers said, no, nothing more, Your Honor. Yes. And this comes up in an odd way because, I mean, he decides to plead guilty, you know, just before the testimony is about to be taken. And the judge – as far as I can tell, the judge actually conducts the colloquy back in the jury room. Yes. And I'm now totally guessing at this, but my guess is that the judge didn't bring his bench book back with him so he doesn't have his Rule 11 colloquy to read from. Right. So he's just kind of winging it a little bit. He went – he asked a lot of questions. He didn't sort of hurry this through and say, okay, I'm taking your plea. You're quite right that he left out a few things. But if we're talking plain error, and then we've got to have some form of prejudice established in order to reverse based on plain error, I think it's a reasonable inference that if you're just about to go to trial, that the lawyer might have said to his client, well, you know, we're going to call the following witnesses or we're going to do the following – I mean, ask the following questions. One would certainly hope that's true. Yes. I would never say that that always occurs. It should occur. It should occur. But I'm not going to concede that it would always occur and I'm not going to concede that it occurred here. It may have. The point is, Your Honor, we don't know from the record what happened in this regard. And again, if you go back to McCarthy, which of course I think has evolved over the years, McCarthy says that when it started out, and of course the rule was far different, the Rule 11 was far different when McCarthy was decided. It didn't have a lot of the collateral matters that are now included. But I believe it did include these important Boykin trial rights. And when McCarthy was decided, the Court actually said that any deviation or any failure to advise someone of their Rule 11 rights was prejudicial. And it was prejudicial because I think it goes to the basic notion that when somebody pleads guilty, there needs to be a record that shows that these important Boykin trial rights are going away. This is a tricky question to which I'm not sure I know the answer. Is prejudice analyzed somehow differently because this comes up on plain error rather than comes up based on an objection made to the judge? Listen, you didn't give him his Rule 11 colloquy properly. That is to say, do all of a sudden, do we ask for real prejudice instead of presumed prejudice, given that this is plain error? Well, I think, I don't know. I guess I don't know if I know the answer to that. There's some other factors that before my time runs out, I. You've got about two and a half minutes. Okay. There's some other things that I just want to point out to the Court before you make your decision, and that is, here's an individual, unlike Mr. Benitez-Dominguez, who, the whole way along, he wanted to go to trial. Right. And for whatever reason, at the last second, he decides that he's going to plead guilty. It was almost as if he'd just given up and that he – there's nothing in the record, including what the attorney may have told him, that shows that he was aware of any of these rights. I'd like to – any of these important constitutional rights. I'd like to point and remind the Court that this individual was not educated in the United States. He had a sixth-grade education. And I also want to point out to the Court that there was no written plea agreement. Written plea agreements are written documents frequently that are in the record. You can look at those and see that somebody has in the past at least been advised of these rights. We don't have that here. We also have a very – I gather there had been a plea agreement that had been offered, but it was now off the table. And who knows whether he read it yet. And that's true. You're absolutely right. There was a plea offer, and there may have even been another plea offer. We have no idea if that was ever committed to writing. And if – and there's nothing in the record that says that did occur. But I would – and let me just end up on this point. I think it's very shocking in a way that this thing was rushed the way it was rushed. And I'm not saying it was the trial judge's fault because, of course, you had a jury waiting. Here you have an individual from another country with a sixth-grade education who one second tugs on his attorney's sleeve and says apparently that he wanted to plead guilty, much to everyone's surprise, maybe even his own. And he does that, and the judge says, okay, you know, what do we do with the jury? And within two minutes after – and this is substantiated from the record that you have, because over at the side it shows the times of these things taking place. Within two minutes, he's in the jury room without the benefit, at least as far as the record goes, of ever seeing any written document explaining these important constitutional rights with him or to him, and he's in there and he's pleading guilty to these very serious matters. And during the plea colloquy, and I know you've read the briefs, but during the plea colloquy, he doesn't even understand what the maximum penalty is for these offenses. At one point, the judge says it's 10 years. Actually, it was 20. It was corrected. And so you – and I'm not raising that in and of itself as error, but I think it shows how rushed this was. There's no written documents that show that otherwise he was advised of these very important rights. That is the issue that a lot of time was spent on, and the colloquy for him was, do you understand what the punishment is? Was that what most of them were talking about? Yes. What I'm trying to get across here is I'm not saying that there's an error because the correct punishment was finally told to him. But what I'm saying is that in a matter where somebody confesses and basically admits to a conviction, which is what a guilty plea is, this entire proceeding was rushed. There were important constitutional rights that were committed. Nothing appears in the record in writing that shows that this individual knew what these important rights were. And I think that there's a due process violation here. Counsel, if you're right, then most guilty pleas have to be thrown out, because in this case, this defendant admittedly, there was a language barrier. Everybody had a translator. He had his attorney there. Any errors in terms of the sentence were corrected right there. The judge spent over 30 minutes, according to the record. And we've all read the transcript of what was said. There was material that was discussed before with his lawyer. His lawyer said he discussed a variety of options, including pleading the indictment as well as circumstances of the trial. When he was prepared to go to trial, just the last minute before the jury was sworn in, he changed his mind. The magistrate had informed him of his initial appearance. He had a right to remain silent and on and on and on. I mean, the reality is to take the time that the judge did to explain what he did, ask if he had any other questions, ask the other counsel, both counsel, is there anything else we need to bring up here? And either one of them said there was a problem. I think it was, as Judge Fletcher said, that the judge didn't bring his rule book in there with him so he could kind of check everything off. But there was certainly a very good-faith attempt by the judge to cover each and every element of this. Would you disagree with that? Yes. Not to be disrespectful. But whose fault was it that the bench book didn't go into the jury room? Well, no, no. You make a good point. So you're – would you say then that if a judge fails to do that, then he's entitled to have a – No. It's not a reversal? No. I don't think there's any evil motives here. I don't think – and I understand the position that this judge was put in. But how difficult is it to remember, frankly, off the top of one's head, that when someone pleads guilty, you need to tell them, for example, that they have a right to a jury trial, that they have a right to representation of counsel at the jury trial, that they have a right to remain silent and they can't be compelled to testify against themselves. Well, part of that was in the record. Yes. But I – What responsibility is there of the defense lawyer to raise any of that? Is there malpractice? Well, I don't want to touch on the malpractice. No, I understand. I'm just saying that the question of sauce for the goose is sauce for the gander to some degree. I'm going to be frank. I was shocked at this, because I – and I don't – this is just – I'm speaking from my experience. I'm sure you've seen many things that maybe are comparable or much worse than this. But I was shocked that three very good lawyers missed this. And, again, I think that the point of all of this is I think we had a trial judge – I'm surprised it was 30 minutes, to be honest, but I take your word for it. I didn't measure that. What is important is what is said during those 30 minutes. And if you don't hit the important matters, which are, according to Boykin, that a person has a right to confront and cross-examine witnesses at trial, which basically tells you that you have a right to present a defense, not just be a wallflower or a spectator at your trial, but you have a right to defend yourself and to challenge the evidence that's being introduced against you, when that basic right is not told, there is a – to a defendant, he's not informed of that, I think there's a violation of due process. And I don't think you see that in that many cases. You may see somebody forget to advise somebody about some of the other terms of a plea agreement and have to judge, well, does that affect whether or not they would have entered the plea. But this is a case where his basic right to be told that these important constitutional rights were his and he had to know them and to intentionally relinquish them before pleading guilty, they weren't told to him and they were not difficult to remember. We've taken you over. We clearly understand your position. We'll give you a moment to – a minute to rebut. Thank you very much. Yeah. I apologize for my tardiness this morning. My transportation to court broke down. You were several minutes before your scheduled time.  Thank you, Your Honor. But that proves the point that things don't always go smoothly. And the Supreme Court said in Article 9 of Dominguez-Benitez that flawed plea – 11 Although this colloquy didn't go by the book, it did sufficiently apprise the defendant of his rights, particularly under the plain error standard. Do we have any indication as to why he changed his mind? Might it be that he misunderstood of what was going to take place at the trial, that he would have these rights that your opponent mentioned? Your Honor, that's not in the record. What is in the record is that the defendant was looking for a particular outcome and each he had received two, he kept complaining it was too much time. And there's nothing in the record that shows why he chose the time that he did to plea, but he did so. This case boils down to two major rights that the defendant claims that he wasn't advised of. The first is his right not to testify. And although the court didn't tell him that he had the right not to testify, what the court did inform the defendant of is he said, and you understand if you went to trial and didn't testify, the jury would be told that they're not to consider that in any way or discuss it in deciding whether or not you're guilty of any offense. So although the court didn't say you have the right not to testify, by that statement the defendant understood that he had the choice whether to testify and that the jury would be instructed not to hold his choice against him. In addition to that, the magistrate previously had informed him at his initial appearance of his right to remain silent, and he exercised that right. What, if anything, are we to make of that? That he knew that he didn't have to provide any information to the court or the authorities that he did not wish to do so. Would that carry over to the trial? Yes, it would, Your Honor. Do we have any cases that say that? Well, Your Honor, there's Park v. Rowley, which says that a court can take into account a defendant's criminal history in determining whether he knew his rights or not. So basically if he's familiar with the judicial system, particularly the criminal justice system, and there's evidence of that to the degree that one had been advised in a different context that you could at least infer that he was aware of his right. Yes, Your Honor. Now, I think you were not the trial attorney, is that correct? No, I wasn't, Your Honor. So this comment is directed generally and not specifically at you. I would have hoped that in this circumstance that the U.S. attorney I understand it's difficult to tell the judge how to do his job, but I would have hoped that the U.S. attorney would have suggested to the district judge, you know, Judge, why don't you go back to the bench and get your little book on Rule 11 colloquies, or whatever it was, because it should have been apparent, I think, to both the defense attorney and the AUSA that the judge was, what's the right word for this, doing it from memory. Yes, Your Honor. And that would have definitely been the preferred course, but that didn't happen here. And what we're left with is seeing that Rule 11 was substantially complied with. And something that I wanted to bring up is there's a case that's cited in our action brief of Frickman v. Tanton where the court had before a similar problem in which the court didn't advise the defendant explicitly of its right to court-examine witnesses. And the court said there, and that was this court. Here, the record unmistakably discloses that although the sentencing court did not specifically advise Frickman that he's pleaded guilty of waiving his rights to confrontation and compulsory process, the court did advise him that you have a constitutional right to have a trial before a jury, that at trial you may compel the government to prove your guilt by competent evidence. And the court said that is arguably a fair statement of the Sixth Amendment right to confrontation. What the judge said in this case is if you went to trial, you would be presumed innocent. And before the jury could find you guilty, the government would have to prove all the elements of the offense to the jury beyond a reasonable doubt. So while it certainly isn't a perfect thing, it's not explicit, it did give him the general idea of what was going to happen at trial. The court during the jury selection stated to the jury in the defendant's presence that there were going to be witnesses and gave the names of the witnesses to see if the jurors knew any of them. With the defendant present, he had to understand in a general constitutionally sufficient sense what was going to happen. The last thing I'll discuss, unless this court has any other questions. The argument was made in the briefing that there is a separate due process violation if one of the borking rights is not mentioned. The right discussed in Boykin and referred to in Fringo 10 of Dominguez Benitez is where the record is silent. In Boykin, there truly was a silent record. The court simply accepted the defendant's plea guilty here. While there were certainly flaws in the colloquy, it certainly was not a silent record, so you would have to look at this for prejudice. What Dominguez Benitez states, as far as prejudice goes, is that there had to be a strategic choice that the defendant, that the right that he had not been informed of would have made a difference. Here, we have a very strong case. The defendant did not indicate that he had any defenses that he would have contested his guilt. So all in all, while there certainly is not a perfect colloquy, the defendant's rights were sufficiently told to him, especially under a plain-errand standard. If there are no further questions, thank you. Okay, thank you very much. Ms. Hinchcliffe, we took you over. If you'd like one minute, you may have it. Let me start out with an irrelevant question. You don't like sitting at our table? Attribute it to nerves. I always like to sit in the back, so I guess it's carried. No offense intended by that, of course. Are there any questions that the Court has as a result of the comments made by counsel for the other side? I don't think so. I just have a couple of things. It's Vaughn and it's Dominguez-Benitez that allow the Court, that allows the Court to look at the entire record to see if there's other instances that basically provide the missing rights. You mentioned what happened at the detention hearing when the judge addressed or the magistrate addressed four individuals and told them, if you say anything today, you have the right to remain silent, you don't have to say anything today, but if you do say something, it can be held against you. I don't think that that is sufficient to advise somebody when it's said at a hearing months later, and it was about nine, ten months later, that, in fact, at trial, he could not be forced into testifying against himself or giving evidence of any sort. Anything else? Okay. Thank you very much for your time. Thank you. Thank both sides for good arguments. The United States v. Ramirez-Valadez now submitted for decision. The next case for argument, Sekar v. McDaniel. Thank you.
judges: Hug, Fletcher W. , Smith M.